UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAROLD JEAN CLEMENT, JR. | * | CIVIL ACTION |
| VERSUS | * | NO. 22-479 |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | * | SECTION "H" (2) |

## REPORT AND RECOMMENDATION

Plaintiff Darold Jean Clement, Jr. seeks judicial review pursuant to section 405(g) of the Social Security Act ("the Act") of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for disability insurance benefits ("DIB") under Title II and Part A of Title XVIII of the Act.[1]  Pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B), this matter was referred to the undersigned United States Magistrate Judge for submission of Findings and Recommendations.

## I.    PROCEDURAL HISTORY

Plaintiff Darold Clement is a now 51-year-old man who filed an application for DIB alleging disability commencing on January 1, 2020.  ECF No. 9-6, at 2.  His relevant work history is as an HVAC installer and services.  ECF No. 9-3, at 8, 17; 9-7, at 3-4.  Clement's age classification was that of a "younger person" on the onset date, but later changed age category to "closely approaching advanced age."  20 C.F.R. §§ 404.1563(c), (d); *see also* ECF No. 9-2, at 28. He alleges that he is disabled due to aneurysm, strokes, blood pressure, emotional, feet and other medical issues.  ECF No. 9-3, at 2; 9-7, at 2.

---

[1] 42 U.S.C. §§ 405(g).

Clement's application was denied at the agency level on August 14, 2020. ECF Nos. 9-4, at 2-6; ECF No. 9-3, at 2-19. Plaintiff requested reconsideration on September 21, 2020, and his claim was again denied on reconsideration on February 3, 2021. ECF No. 9-4, at 17-21; No. 9-3, at 20-47. Plaintiff filed a request for hearing (ECF No. 9-4, at 22-24), and the matter was heard on August 24, 2021, before Administrative Law Judge ("ALJ") David Benedict. ECF No. 9-2, at 39-66. Clement appeared and testified at the hearing and was represented by counsel, Ron C. Adams. *Id.* at 41, 46-58. Beth Drury, an impartial vocational expert, also appeared and testified at the hearing. *Id.* at 40, 58-64.

On October 27, 2021, ALJ Benedict issued a decision denying Clement's application for benefits. ECF No. 9-2, at 8-10, 11-30. After the Appeals Council denied review on January 31, 2022, the ALJ's decision became the final decision of the Commissioner for purposes of this Court's review. ECF No. 9-2, at 2-6. Clement filed this action on February 23, 3022. ECF No. 1. In accordance with this Court's Scheduling Orders, Clement filed a motion for summary judgment on August 11, 2022, and the Commissioner filed a cross-motion for summary judgment on September 7, 2022. ECF Nos. 10, 16, 17, 19.

## II.    STATEMENT OF ISSUES ON APPEAL

Clement identifies four issues for appeal:

1.    The Administrative Law Judge did not consider all the claimant's medically determinable impairments and symptoms when formulating the residual functional capacity assessment.

2.    The Administrative Law Judge did not consider if the claimant meets or medically equaled listing 11.04C.

3.    The Administrative Law judge did not consider all the medical opinions in the record.

4.    The Administrative Law judge relied on the Vocational Expert's testimony in violation of SSR 00-4p.[2]

---

[2] *See* ECF No. 17-1, at 1.

2

III.   **ALJ's FINDINGS RELEVANT TO ISSUES ON APPEAL**

      The ALJ made the following relevant findings in his ruling:

1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2.     The claimant has not engaged in substantial gainful activity since January 1, 2020, the alleged onset date (20 CFR 404.1571 et seq.).

3.     The claimant has the following severe impairments: effects of two cerebral vascular accidents; ischemic stroke; effects of non-ruptured aneurysm; hypertension, sinus bradycardia, hyperlipidemia, obesity, and depression. (20 CFR 404.1520(c)).

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) meaning the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently and the claimant can stand and/or walk for a total of six hours in an eight-hour day and sit six hours in an eight-hour work; except, the claimant can occasionally climb ladders, ropes, scaffolds, ramps, and stairs; the claimant can frequently reach, handle, and finger with the right upper extremity; the claimant must avoid concentrated (frequent) exposure to extreme heat, wetness, humidity, vibration, pulmonary irritants (fumes, odors, dusts, gases, and poor ventilation) and workplace hazards such as dangerous moving machinery and unprotected heights; the claimant can perform simple, routine and repetitive tasks of unskilled work; the claimant can maintain attention and concentration for no longer than two hour blocks of time; the claimant can have occasional interaction with supervisors, co-workers, and the general public; and the claimant can perform low stress work, such as no fast paced production requirements and only simple work-related decisions with few or no changes in the work setting.

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.     The claimant was born on June 8, 1971 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8.     The claimant has at least a high school education (20 CFR 404.1564).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant

is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2020, through the date of this decision (20 CFR 404.1520(g)).[3]

## IV.  ANALYSIS

### A.  Standard of Review

The role of this Court on judicial review under 42 U.S.C. § 405(g) is to determine whether the decision is supported by substantial evidence on the record as a whole and whether the proper legal standards are applied in evaluating the evidence.[4]  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it is more than a scintilla but less than a preponderance.[5]  A finding of "no substantial evidence" is appropriate only if no credible evidentiary choices or medical findings support the decision.[6]  The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try any issues *de novo*.[7] This standard precludes the court from reweighing the evidence or substituting its judgment for that of the administrative fact finder.[8]

---

[3] ECF No. 9-2, at 14, 16-18, 28-29.
[4] *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citing *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)); *Richard ex rel Z.N.F. v. Astrue*, 480 F. App'x 773, 776 (5th Cir. 2012) (citation omitted); *Stringer v. Astrue*, 465 F. App'x 361, 363 (5th Cir. 2012) (citing *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)).
[5] *Richardson v. Perales*, 402 U.S. 389, 401 (5th Cir. 1971) (citation omitted); *Richard ex rel Z.N.F.*, 480 F. App'x at 776 (citing *Perez*, 415 F.3d at 461).
[6] *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (citations omitted).
[7] *Halterman ex rel Halterman v. Colvin,* 544 F. App'x 358, 360 (5th Cir. 2013) (citing *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).
[8] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)); *see also Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985).

The court must affirm the Commissioner's determination to deny benefits unless it finds that the ALJ applied the incorrect legal standard or that the ALJ's determination is not supported by substantial evidence.[9]  The Court weighs four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.[10]

To be considered disabled and eligible for SSI,[11] a claimant must show that he is unable to perform substantial gainful activity because of a medically determinable physical or mental impairment.[12]  A "physical or mental impairment" is "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."[13]  To qualify as a disability, the impairment must be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.[14]  The mere presence of an impairment, however, is not enough to establish that one is suffering from a disability.  Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity."[15]  Thus, to be considered disabled and eligible for benefits,[16] the Claimant must prove his disability by establishing a physical or mental

---

[9] *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

[10] *Chrisner v. Astrue,* 249 F. App'x 354, 356 (5th Cir. 2007) (quoting *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)); *accord Perez*, 415 F.3d at 462 (citation omitted).

[11] The relevant law and regulations governing claims for disability insurance benefits and SSI are identical.  *Carmon v. Barnhart*, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).

[12] *See* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).

[13] 42 U.S.C. § 423(d)(3).

[14] *Id.* § 423(d)(1); *see also Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted).

[15] *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)) (internal quotations and emphasis omitted).

[16] The relevant law and regulations governing claims for DIB and supplemental security income are identical. *Carmon v. Barnhart*, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).

impairment lasting at least twelve months that prevents him from engaging in substantial gainful activity.[17]

The Commissioner has promulgated regulations that provide procedures for evaluating disability claims.[18] "In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in [A]ppendix 1 of the [S]ocial [S]ecurity [R]egulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity."[19] The claimant has the burden of proof under the first four steps; if the claimant successfully carries this burden, the burden shifts to the Commissioner at the fifth step to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing.[20] When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant."[21]

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. At Step 3, the ALJ must identify every Listing that could apply to the claimant.[22] However, "[p]rocedural perfection in administrative hearings is not required," and a reviewing court may only vacate a judgment if the "substantial rights" of a party have been affected.[23] With respect to a given Listing, a claimant's substantial rights are affected where the claimant "would

---

[17] 42 U.S.C. § 1382c(a)(3)(A); *see also* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).

[18] 20 C.F.R. §§ 404.1501–1599 & Appendices, §§ 416.901–998.

[19] *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007).

[20] *Id.* at 448.

[21] *Plaisance v. Astrue*, No. 08-5134, 2009 WL 4161086, at *2 (E.D. La. Nov. 23, 2009) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Kraemer v. Sullivan*, 885 F.2d 206, 208 (5th Cir. 1989)).

[22] *Audler*, 501 F.3d at 448 ("The ALJ did not identify the listed impairment for which Audler's symptoms fails to qualify, nor did she provide any explanation as to how she reached the conclusion that Audler's symptoms are insufficiently severe to meet any listed impairment. Such a bare conclusion is beyond meaningful judicial review.") (internal quotation omitted).

[23] *Mays v. Bowen*, 837 F.2d 1362, 1362–63 (5th Cir. 1988).

appear to have met [his] burden of demonstrating that [he] meets the Listing requirements" for a given Listing.[24]

**B.  Factual Background**

 Plaintiff testified that he is 50-years old with a 12th grade education.  ECF No. 9-2, at 46; ECF No. 9-7 at 7.  He worked as an HVAC servicer and repairman with Rex Heating from 2007-08, after which he had his own HVAC business from 2009-2019.  ECF No. 9-2, at 46; see also ECF No. 9-7, at 7-8.  In 2006, he worked as a welder's helper.  ECF No. 9-2, at 46.

Plaintiff stated that he has a brain aneurysm and has had two strokes.  ECF No. 9-2 at 47; ECF No. 9-7, at 6.  As a result of his strokes, he has trouble concentrating and remembering as well as depression and anxiety.  ECF No. 9-2 at 47; ECF No. 9-7, at 58.  He also indicates difficulty understanding and following instructions.  ECF No. 9-7, at 31.  His depression makes him not want to do anything or go anywhere.  ECF No. 9-2 at 49.  He has right side weakness and keeps dropping things from his right hand.  ECF No. 9-2 at 47; ECF No. 9-7, at 58.  He reported having COVID in May and gets out of breath when he climbs stairs.  ECF No. 9-2 at 47; see also ECF No. 9-2 at 51-52.  He also described blisters on his feet, which interferes with his walking.  ECF No. 9-2 at 50-51.  The condition usually occurs during the summertime but is calmer now that he gets Dupixent shots.  *Id.* at 50.  He also testified that he does not like being around people.  ECF No. 9-2 at 51.

Although Plaintiff testified that his condition has not changed since onset in January 2020, he submitted information suggesting that his condition worsened in February and May of 2020.  ECF No. 9-2 at 48; ECF No. 9-7, at 58, 95.  Plaintiff indicated the ability to lift five pounds, stand or sit at 20-minute intervals, and walk about half a block.  ECF No. 9-2 at 48.  In his Function

---

[24] *Audler*, 501 F.3d at 449; *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (stating claimant bears burden at step three to demonstrate that he meets a given Listing).

Report, Plaintiff indicates that he cannot be exposed to heat, perform heavy lifting, be exposed to flashing light, and it is not a good idea to climb.  ECF No. 9-7, at 26.  He testified that he cannot do household chores because he drops the dishes and gets dizzy when he looks down to sweep.  ECF No. 9-2 at 48.  He indicates that he can perform his personal care needs, but it takes longer and he does things more slowly.  ECF No. 9-7, at 27.  He makes sandwiches and TV dinners.  ECF No. 9-7, at 28, 84.  He gets around by walking and driving a truck, and he shops in stores weekly.  ECF No. 9-7, at 29, 85.  He is able to pay bills and count change, but he does not have a savings or checking account.  ECF No. 9-7, at 29.

Plaintiff indicated that, due to the aneurysm, he is not supposed to get stressed out.  ECF No. 9-2 at 49.  He has not had surgery because the aneurysm is currently small, and there is a 1:4 chance of having another stroke if he has surgery.  ECF No. 9-2 at 50.

### C.  Vocational Expert Testimony

The vocational expert, Beth Drury, testified at the hearing.  She classified Plaintiff's work as a welder's helper as DOT reference 819.687-014, strength level heavy, SVP: 2, unskilled, and his HVAC work as DOT reference 637.261-014, strength level medium but as performed anywhere from heavy to very heavy, SVP: 7, skilled.  *Id.* at 60-61.    In exploring available work in the national economy, the ALJ posed a hypothetical based on an individual of the same age, education, and work experience who can lift 20 pounds occasionally and 10 pounds frequently, stand and walk for a total of six hours in an eight-hour workday, sit six hours in an eight-hour workday, limited to only occasional climbing ramps, stairs and ladders, ropes and scaffolds, but able to frequently reach, handle and finger with the right upper extremity, and who must avoid concentrated (i.e., frequent) exposure to hazards, including dangerous moving machinery in unprotected heights.    *Id.* at 61.  In response, Ms. Drury testified that there was work that

accommodated those limitations, including 124,500 positions of markers (light, SVP: 2, unskilled), 221,500 cleaner/housekeeper (light, SVP: 2, unskilled), and 97,460 routing clerk positions (light, SVP: 2, unskilled). *Id.* at 62.

Adding to the hypothetical, the ALJ asked whether those positions could accommodate an individual who was limited to simple, routine, repetitive tasks, who could maintain attention and concentration for no longer than two-hour blocks of time, who could occasionally interact with supervisors, co-workers and the general public, and who was limited to a low-stress work environment. Ms. Drury opined that all three of the previously identified positions could accommodate those additional limitations. *Id.* The ALJ then asked whether an individual who required 10-minute breaks each hour could perform these jobs, and Ms. Drury indicated that such an individual would not be able to maintain or sustain a job with that additional limitation. *Id.* at 62-63. The ALJ then asked Ms. Drury to explain the factors not specifically addressed in the DOT (disparity in reaching, handling, fingering between the right and left upper extremities, as well as work breaks and absenteeism). Ms. Drury explained that her opinion in those respects was based on her professional knowledge, experience, training and education. *Id.* at 63.

Plaintiff's counsel then modified the ALJ's hypothetical to ask whether a person who could only occasionally use his right upper extremity for handling and fingering could perform the identified jobs, and Ms. Drury indicated such a person could not. *Id.* at 63. Counsel further modified the hypothetical to ask whether someone who could only occasionally lift 15 pounds could perform those jobs, and Ms. Drury indicated such a person could not and would be limited to more sedentary positions. *Id.* at 64. Counsel asked about a person who would be off task 12% of the day, and Ms. Drury explained that, as she previously testified, such a person would not be able to maintain or sustain any type of job. *Id.*

After the hearing, the ALJ sent vocational interrogatories to Ms. Drury, to which she responded on September 16, 2021. ECF No. 9-8, at 12-14. In the interrogatories, the ALJ added an additional limitation of avoiding concentrated exposure (no more than frequent) to extreme heat, wetness, humidity, vibration, and pulmonary irritants (fumes, odors, dust gases and poor ventilation) to his hypothetical, and asked whether the three previously identified positions could still be performed by such individual. Ms. Drury responded affirmatively. *Id.* at 14. The ALJ sent a copy of Ms. Drury's interrogatory responses but received nothing back from Plaintiff or his counsel. *Id.* at 15-17; ECF No. 9-2, at 11.

### D. **Medical Evidence**

I have reviewed the medical records and the ALJ's summary of the medical evidence. ECF No. 9-2, at 14-16, 17, 19-25. The ALJ's summary of the medical evidence is substantially correct and is incorporated herein by reference, with the modifications, corrections and highlights noted below.

### E. **Plaintiff's Appeal**

At step 1, the ALJ determined that Clement meets the insured status requirements through December 31, 2024, and that he has not engaged in substantial gainful activity since January 1, 2020.[25] At step 2, the ALJ found severe impairments of effects of two cerebral vascular accidents, ischemic stroke, effects of non-ruptured aneurysm, hypertension, sinus bradycardia, hyperlipidemia, obesity, and depression (20 C.F.R. § 404.1520(c)) and non-severe impairments of acute cystitis, dyshidrosis, and COVID-19 infection (20 C.F.R. § 416.922).[26] At step 3, the ALJ found that, considering all of Plaintiff's medically determinable impairments, including non-

---

[25] ECF No. 9-2 at 14.
[26] *Id.*

severe impairments, he did not have an impairment or combination of impairments that meets or medically equals the severity of any listed impairment.[27]

Before proceeding to step 4, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with certain specified additional limitations.[28]  At step 4, the ALJ determined that Plaintiff is unable to perform any past relevant work as an HVAC installer and servicer (DOT Code #637.261-014) as that work requires performance of work-related activities precluded by his RFC.[29]  At step 5, considering Plaintiff's age, education, work experience, and residual functional capacity and vocational expert testimony,  the ALJ determined that Plaintiff could perform other work available in significant numbers in the national economy.[30]

Plaintiff objects to the ALJ's analysis and conclusions at steps two and three, contending that the ALJ did not consider:

- "if the claimant meets or medically equaled listing 11.04(C);"

- "all the claimant's medically determinable impairments and symptoms when formulating the residual functional capacity assessment;"  or

- "all the medical opinions in the record."[31]

Plaintiff also argues that the ALJ "relied on the Vocational Expert's testimony in violation of SSR 00-4p."[32]

---

[27] ECF No. 9-2 at 16.
[28] ECF No. 9-2 at 17-28.
[29] *Id.* at 28.
[30] ECF. No. 9-2 at 28-29.
[31] ECF No. 17-1 at 1.
[32] *Id.*

### 1.  The ALJ Considered 11.04(C)

Contrary to Plaintiff's contention, the ALJ did expressly consider whether he met or medically equaled listing 11.04(C).[33]  Specifically, the ALJ stated:

> The severity of the claimant's physical impairment(s), considered singly and in combination, does not meet or medically equal the criteria of any impairment listed in Category of Impairments 4.00 (Cardiovascular System) including listing 4.05 (Recurrent arrhythmias) and *Category 11.00 (Neurological Disorders) including listing 11.04 (Vascular insult to the brain).*
> . . . .
> Listing 11.04 is not met. There is no evidence in the record to indicate that the claimant had sensory or motor aphasia resulting in ineffective speech or communication. (Ex. 9F/37-38). There is also no evidence that the claimant had disorganization of motor function in two extremities resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or using the upper extremities. (Exs. 3F/12; 8F/5, 17; 18F/13). Finally, there is no evidence that the claimant had a marked limitation in physical functioning and in one of the criteria of 11.04C. (Ex. 18F/13).[34]

Accordingly, this assignment of error has no merit.

### 2.  Consideration of All Medically Determined Impairments in the Residual Functional Capacity Determination

If a claimant cannot establish that he meets or has the medical equivalent of a Listing, in which case disability would be presumed, the ALJ must then determine whether he is capable of performing other work available in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience in conjunction with the Medical-Vocational Guidelines at 20 C.F.R. Part 404, Subpart P, Appendix 2.[35]

The RFC is the most a claimant can do despite their limitations.  20 C.F.R. § 416.945(a)(1). It is an administrative assessment made by the ALJ based on the totality of the evidence in the record. 20 C.F.R. §§ 416.945(a)-(e); 416.946. When making the assessment, the ALJ should

---

[33] ECF No. 9-2, at 16.
[34] *Id.*
[35] *Boyd v. Apfel*, 239 F.3d 698, 705–06 (5th Cir. 2001); 20 CFR §§ 404.1520(e)(g), 404.1560(c)).

consider medical assessments, descriptions by physicians, descriptions by the claimant, and any other evidence that shows any limitations on the claimant's ability to work.[36] The ALJ is to resolve any conflicts in the medical evidence after evaluating the record.[37] In assessing the RFC, "the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule)." SSR 96-8p, 1996 WL 374184 (July 2, 1996) (footnote omitted). The issue of whether the claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment.[38]

In this case, before turning to the final two steps of the analysis, the ALJ determined that Plaintiff had the following RFC:

> to perform light work as defined in 20 CFR 404.1567(b) meaning the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently and the claimant can stand and/or walk for a total of six hours in an eight-hour day and sit six hours in an eight-hour work; except, the claimant can occasionally climb ladders, ropes, scaffolds, ramps, and stairs; the claimant can frequently reach, handle, and finger with the right upper extremity; the claimant must avoid concentrated (frequent) exposure to extreme heat, wetness, humidity, vibration, pulmonary irritants (fumes, odors, dusts, gases, and poor ventilation) and workplace hazards such as dangerous moving machinery and unprotected heights; the claimant can perform simple, routine and repetitive tasks of unskilled work; the claimant can maintain attention and concentration for no longer than two hour blocks of time; the claimant can have occasional interaction with supervisors, co-workers, and the general public; and the claimant can perform low stress work, such as no fast paced production requirements and only simple work-related decisions with few or no changes in the work setting.[39]

In making this finding, the ALJ considered all Plaintiff's symptoms, the extent to which his symptoms can reasonably be accepted as consistent with the objective medical evidence and other

---

[36] *Hollis v. Bowen*, 837 F.2d 1378, 1386–87 (5th Cir. 1988 (citation omitted)).
[37] *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted).
[38] *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003) ("An ALJ may explore [whether claimant can hold a job for significant period of time] in connection with the claimant's physical diagnosis as well as in the ability-to-work determination."); *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (citations omitted) (stating that the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion).
[39] ECF No. 9-2, at 17-18.

evidence, the medical opinions in the record, and prior administrative medical findings in accordance with the requirements of 20 CFR 404.1520c.[40]

a. Consideration of all MDIs

Plaintiff argues that the ALJ did not consider all of his medically determinable impairments ("MDIs") in reaching his RFC.[41]  The record before this Court reflects otherwise. The ALJ noted that Plaintiff has severe impairments of the effects of two cerebral vascular accidents, ischemic stroke, effects of non-ruptured aneurysm, hypertension, sinus bradycardia, hyperlipidemia, obesity and depression.[42]  The ALJ analyzed each severe impairment and determined that none meets or equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.[43] Despite that, the ALJ still properly considered each impairment and its associated symptoms in making his RFC finding using a two-step process.  First, he assessed whether Plaintiff has an "underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the claimant's pain or other symptoms."[44]  Then, the ALJ evaluated the "intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities."[45]

The ALJ ultimately found that Plaintiff has MDIs that could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the medical evidence and other evidence in the record.[46]  In support of this conclusion, the ALJ provided an analysis of each of Plaintiff's medical records from his March 27, 2019 stroke onward.  Despite Plaintiff's allegation that "he is

---

[40] ECF No. 9-2 at 18.
[41] ECF No. 17-1 at 1.
[42] ECF No. 9-2 at 14.
[43] *Id.* at 16.
[44] *Id.* at 18.
[45] *Id.*
[46] *Id.* at 19.

no longer able to work due to his severe impairments,"[47] the ALJ noted marked improvement in Clement's cognitive and physical functioning from March 2019 to present. The ALJ tracked Plaintiff's physical and mental status from 2019 to present by assessing Plaintiff's hospital, cardiologic, occupational therapy, neurologic, counseling, and behavioral analysis records in careful detail.[48]

(1) Post-Stroke MDIs

ALJ Benedict specifically addressed and analyzed Plaintiff's stroke-related MDIs, namely the effects of two cerebral vascular incidents and ischemic stroke.  He began his analysis by assessing Plaintiff's health status upon hospitalization following his March 27, 2019 stroke. Immediately following the stroke, the ALJ noted that Plaintiff had "old right lower facial weakness and new right arm weakness along with a cranial nerve defect."[49]  Plaintiff has complained of memory issues and right-side weakness since the March 2019 stroke.[50]  The ALJ tracked Plaintiff's post-stroke progress through each medical record and noted that, through the passage of time and the assistance of occupational therapy, Plaintiff "has made an excellent recovery."[51]  The ALJ acknowledged that Plaintiff's medical records indicate that he still suffers "*occasional* word finding difficulties and a *subtle* right-hand weakness" (emphasis added) and took this into account when crafting the RFC.[52]

(2) Effects of Non-Ruptured Aneurysm

The ALJ also explicitly addressed Plaintiff's non-ruptured aneurysm MDI, considering, *inter alia,* the medical opinion of Clement's neurologist Dr. Nerva, who noted that the aneurysm

---

[47] ECF No. 9-2 at 18.
[48] *Id.* at 18-28.
[49] *Id.* at 19.
[50] *Id.* at 18.
[51] *Id.* at 22 (quoting Dr. John Nerva, neurologist).
[52] *Id.*

was less than 3mm and advised Plaintiff that there was a "less than one percent likelihood per year of hemorrhage based on the size and location of the aneurysm," but that rupture "carried a 50 percent mortality rate and high rate of disability."[53]  Plaintiff elected to proceed with observation rather than face the risks of surgery after consulting Dr. Nerva.[54]  The ALJ highlighted that Dr. Nerva did not give the Plaintiff *any* type of limitations on his activities based on the aneurysm, instead advising Plaintiff to continue taking his blood pressure medication and smoking cessation to prevent rupture.[55]  Further, after noting that Plaintiff's aneurysm had stabilized compared to the previous imaging, Dr. Nerva recommended follow-ups on an annual basis through 2024 with a follow up three years after that and then every five years if the aneurysm was stable.[56]  The ALJ noted these assessments in his decision and considered this MDI in creating Plaintiff's RFC by, among other things, including a restriction on Plaintiff' exposure to extreme heat, wetness, humidity, vibration, pulmonary irritants, and other workplace hazards.[57]

> (3) Hypertension, Sinus Bradycardia, Hyperlipidemia, and Obesity

ALJ Benedict highlighted and considered each of these MDIs in the process of crafting the RFC. He noted that Plaintiff takes prescription medication to regulate his blood pressure, which was the apparent cause of his lingering (asymptomatic) bradycardia until a medication adjustment seemingly resolved the latter condition.[58]  The ALJ also took note of Plaintiff's hyperlipidemia and obesity, explicitly determining that Plaintiff's "functional limitations caused by the obesity do not alone, or in combination with another impairment, medically equal a listing."[59]  He further

---

[53] ECF No. 9-2 at 20.
[54] *Id.*
[55] *Id.*
[56] *Id.* at 25.
[57] *Id.* at 17-18.
[58] *Id*. at 20, 22.
[59] ECF No. 9-2 at 16.

opined that Plaintiff's obesity "does not increase the severity of co-existing or related impairments."[60]  This finding is supported by substantial evidence.

(4) Mental Impairments

With regard to Plaintiff's mental impairments, the ALJ performed the required paragraphs B and C analyses under 20 C.F.R. Part 404, Subpart. P, Appendix 1, § 12.03; 20 C.F.R. § 404.1520a.[61]  The ALJ properly assessed whether Claimant's mental impairment resulted in at least one "extreme" or two "marked" limitations in the following broad functional areas: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentration, persistence, or pace; and (4) adapting or managing oneself.  Based on the record evidence, the ALJ concluded that Clement had *moderate* limitations in each area.[62]  After finding that Claimant did not have either one "extreme" or two "marked" limitations, the ALJ properly moved to assess the paragraph C criteria, finding that the record evidence did not establish the presence of paragraph C criteria.[63]  Those findings are supported by substantial evidence.

ALJ Benedict then properly considered Plaintiff's mental impairments in rendering the RFC, determining that Plaintiff should be limited to "simple, routine, repetitive tasks of unskilled work; occasional interaction with others; two-hour blocks of time for concentration; and low stress work" to account for Clement's depression and status post two strokes and aneurysm.[64]

b.  <u>Consideration of all Medical Opinions</u>

Plaintiff also argues that the ALJ failed to consider all of the medical opinions in the record in reaching his RFC determination.

---

[60] *Id.*
[61] ECF No. 9-2 at 16-17.
[62] *Id.*
[63] *Id.* at 17.
[64] *Id.* at 28.

Initially, the ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record.[65]  Indeed, the ALJ explained that he "cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources."[66]  While ALJ Benedict could not *defer* to prior medical opinions, he did fully *consider* each medical opinion and prior administrative medical finding in his RFC analysis.[67]  He identified which medical opinions persuaded, partially persuaded, and failed to persuade him, and he provided detailed explanations for each conclusion.[68]

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.  Thus, although Plaintiff disagrees with the ALJ's findings, the ALJ did incorporate certain limitations into his RFC analysis to account for Claimant's limitations.[69]  Plaintiff's disagreement with that finding, when that finding is supported by substantial evidence, is insufficient to establish error.  Moreover, this Court may not reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner, even if the evidence weighs against the Commissioner's decision.[70]

The ALJ applied the correct legal standard and his finding that, considering Claimant's age, education, work experience, and residual functional capacity, he is capable of making a successful adjustment to other work that exists in significant numbers in the national economy[71]

---

[65] *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).
[66] ECF No. 9-2 at 26.
[67] *Id.*
[68] *Id.* at 26-28.
[69] *Id.* at 17-18.
[70] *Halterman ex rel Halterman v. Colvin*, 544 F. App'x 358, 360 (5th Cir. 2013) (citing *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)).; *Stringer v. Astrue*, 465 F. App'x 361, 364 (5th Cir. 2012).
[71] ECF No. 9-2, at 29.

is supported by substantial evidence.  He did not err in refusing to incorporate opinions of medical providers that he rejected as being inconsistent with other objective medical evidence.

     c.  <u>The ALJ's Credibility Determination Incident to the RFC</u>

When a claimant gives subjective testimony, the ALJ has the responsibility to evaluate the claimant's credibility.[72]  To determine credibility, the ALJ must review the entire record and express specific reasons supported by evidence in the case record for his credibility findings, but the ALJ does not have to discuss every guiding regulatory factor.[73]  In this case, the ALJ found that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ."[74]

If the ALJ explains his credibility findings and substantial evidence supports those findings, the Court must affirm the ALJ's credibility assessment.[75]  Here, the ALJ provided detailed reasons for discounting Plaintiff's testimony regarding his limitations and finding same inconsistent with the record evidence.[76]  Because the ALJ is best suited to make a credibility determination, the Court gives considerable deference to the ALJ's findings if substantial evidence supports those findings.[77]  The ALJ's credibility determinations in this case will not be disturbed on judicial review.

---

[72] *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (citations omitted).
[73] *Giles v. Astrue*, 433 F. App'x 241, 249 (5th Cir. 2011) (citing *Clay v. Barnhart*, 214 F. App'x 479 (5th Cir. 2007) ("The ALJ is not required to mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility.")).
[74] ECF No. 9-2, at 25-26.
[75] *Undheim v. Barnhart*, 214 F. App'x 448, 450–51 (5th Cir. 2007).
[76] *See, e.g.*, ECF No, 9-2, at 19-25.
[77] *McKnight v. Astrue*, 340 F. App'x 176, 181 (5th Cir. 2009) (citation omitted) ("Credibility determinations are generally entitled to great deference  . . . .").

### 3.  **The Vocational Expert's Testimony Was Properly Considered**

Plaintiff further argues that the ALJ improperly relied on the vocational expert's testimony. ALJ Benedict consulted VE Beth Drury because Plaintiff could not perform the full range of unskilled, light work. He utilized the VE to determine the extent to which Plaintiff's limitations eroded the occupational base.[78]  Counsel for the Plaintiff did not lodge any objection to Ms. Drury serving as a VE in the proceeding.[79]  Plaintiff contends that the ALJ's reliance on Ms. Drury's testimony violated Social Security Regulation ("SSR") 00-4p.

SSR 00-4p provides specific guidance on the appropriate method by which an ALJ must consider vocational expert ("VE")  testimony:

> [B]efore relying on VE or VS evidence to support a disability determination or decision, our adjudicators must: [1] Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT), including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO), published by the Department of Labor, and [2] Explain in the determination or decision how any conflict that has been identified was resolved.[80]

At the hearing, the ALJ explicitly asked VE Drury to advise if any of her opinions conflict with the DOT and provide the basis of her opinion, and the VE complied.[81]

Plaintiff particularly contests the use of VE testimony regarding the disparity in "reaching, handling, and fingering between [Plaintiff's] right and left upper extremities."[82]  He argues that the ALJ's reliance on the VE's conclusion violates SSR 00-4p because Ms. Drury relied on her professional knowledge, experience, training, and education to reach a conclusion about Plaintiff's extremities rather than utilizing the DOT.  However, ALJ Benedict's approach fully complies with

---

[78] ECF No. 9-2 at 28.
[79] *Id*. at 59.
[80] SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000).
[81] Id. at 59.
[82] ECF No. 17-1 at 5.

the process espoused in SSR 00-4p. First, he both identified and had the VE confirm that the disparity in reaching, handling, fingering between the left and right upper extremities was not specifically addressed in the DOT.[83]  Then, the ALJ asked for a "reasonable explanation"[84] for the inconsistency in compliance with SSR 00-4p.  The VE testified that she based her opinion on the extremity disparity on her "professional knowledge, experience, training, and education."[85]

In his decision, the ALJ explicitly addressed this inconsistency and explained that he accepted the VE's testimony on this subject because it was based on her expertise.[86]  He did not err in so relying on VE testimony to elucidate a factor not specifically addressed in the DOT.

## V.    CONCLUSION

The ALJ applied the appropriate legal standards, and substantial evidence supports the ALJ's credibility determinations and RFC findings. Further, the ALJ appropriately considered all of Plaintiff's MDIs and symptoms and medical opinions in the record in formulating the RFC.  His reliance on VE testimony comports with SSA regulations and supports the conclusion that, even with Plaintiff's physical and mental limitations, he has the residual functional capacity to perform work that exists in significant numbers in the economy.

## VI.    RECOMMENDATION

For the foregoing reasons,

**IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment (ECF No. 17) be **DENIED**, the Commissioner's Cross-Motion for Summary Judgment be **GRANTED**, and that Plaintiff's Complaint be **DISMISSED WITH PREJUDICE.**

---

[83] ECF No. 9-2 at 62-63.
[84] SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000).
[85] *Id.* at 63.
[86] ECF No. 9-2 at 29.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[87]

New Orleans, Louisiana, this 6ᵗʰ day of October, 2022.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[87] *See* 28 U.S.C. § 636(b)(1)(C); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).